ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE
————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————

No. 15-3015
————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

RODNEY CLASS,                    Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————

Channing D. Phillips
United States Attorney

Elizabeth Trosman
Chrisellen R. Kolb
Jeffrey Pearlman
*  Valinda Jones, D.C. Bar #398464
Assistant United States Attorneys
*  Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Valinda.Jones@usdoj.gov
(202) 252-6829

Cr. No. 13-0253 (RWR)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant, Rodney Class, and appellee, the United States of America. On October 2, 2015, this Court, on its own motion, appointed David W. DeBruin, Esq., as *amicus curiae* to present arguments on behalf of appellant.

## Rulings Under Review

Appellant challenges an April 16, 2014, Memorandum Opinion and Order by the Honorable Gladys Kessler, which denied various motions to dismiss the indictment, Joint Appendix ("J.A.")[1] at 70-100, and an October 27, 2014, oral ruling by the Honorable Richard W.

---

[1] References to "J.A." are to the joint appendix prepared by *Amicus* in consultation with counsel for appellee.  References to "S.A." are to the supplemental appendix prepared by appellee, which is being filed concurrently with this brief.  Appellant's November 4, 2015, opening brief and *Amicus's* brief will be referred to as "App.Brf." and "Am.Brf.," respectively.

Roberts, which denied additional motions to dismiss the indictment (J.A.142-151). Appellant alleges that the district court erred in failing to dismiss the indictment and seeks reversal of his conviction.

## Related Cases

Appellee is unaware of any related cases.

# STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations other than those set forth herein are contained in the Addendum to the *Amicus* Brief for Appellant.

# Table of Contents

Counterstatement of the Case ........................................... 2

    The Circumstances of Appellant's Arrest ......................... 5

    Appellant's Pre-Trial Motions .................................. 8

    Appellant's Guilty Plea .................................... 12

Summary of Argument ...................................... 15

Argument .................................................. 18

    I.  Appellant Waived Appeal of His Claims by Entering an Unconditional Guilty Plea. .................................. 18

        A.  Applicable Legal Principles and Standard of Review ........ 20

        B.  Appellant's Unconditional Guilty Plea Waived Appeal. .................................................. 21

        C.  No Exception to Waiver Applies in This Case. ................. 24

            1.  The Statutory Claims Are Not Exempt From Waiver. ...................................................... 25

            2.  The Constitutional Challenges Do Not Affect Subject-Matter Jurisdiction. ........................................ 26

            3.  The Constitutional Challenges Do Not Fall Within the *Blackledge/Menna* Exception. ................. 27

        D.  The Void-for-Vagueness Claim Is Also Forfeited Because It Was Not Raised in District Court. ................. 29

    II.  Even If Appellant Has Not Waived His Second Amendment Claim, the Capitol Grounds Security Statute Is Constitutional As Applied To Him. ....................... 33

        A.  Applicable Legal Principles and Standard of Review ........ 33

B.  Appellant's Conduct Falls Outside the Scope of the Second Amendment. ..........................................................35

  1.  Appellant's Carrying of Concealed Firearms Is Not Protected by the Second Amendment....................37

  2.  A Prohibition on Possessing Firearms in a Sensitive Place Like the Capitol Grounds Is Presumptively Lawful Under the Second Amendment. ................................................................40

  3.  Any Interference With Second Amendment Rights Is De Minimis. ..................................................45

C.  Assuming That the Firearms Provision Impinges On a Second Amendment Right, It Is Nonetheless Constitutional. ....................................................................47

  1.  Intermediate Scrutiny is Appropriate. ........................47

  2.  The Capitol Grounds Security Statute Promotes a Substantial Government Interest................................52

III. The Capitol Grounds Security Statute Is Not Unconstitutionally Vague........................................................55

IV. Application of the Capitol Grounds Security Statute to Appellant Does Not Violate the Equal Protection or Privileges and Immunities Clauses. ........................................61

V.  Appellant's Statutory Claims Have No Merit...........................64

CONCLUSION ................................................................................66

v

# TABLE OF AUTHORITIES*

Page

*Blackledge v. Perry*, 417 U.S. 21 (1974) ......................................21, 27-28

\* *Bonidy v. U.S. Postal Service*, 790 F.3d 1121
(10th Cir. 2015)................................................ 39-40, 42-43, 52, 55, 63

*Bridgeman v. United States*, 229 F.3d 589 (7th Cir. 2000) ..............22, 23

*City of Cleburne, Tex. v. Cleburne Living Center*,
473 U.S. 432 (1985) ................................................................63

\* *District of Columbia v. Heller* ("*Heller*"),
554 U.S. 570 (2008) ..........................................9-10, 34, 36-37, 40, 48

\* *Georgia Carry Org., Inc. v. U.S. Army Corps of Engineers*,
38 F. Supp. 3d 1345 (N.D. Ga. 2014),
*aff'd* 788 F.3d 1318 (11th Cir. 2015) ................................................49, 51

\* *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011)
("*Heller II*") ......................................................................33-35, 47-48

*Heller v. District of Columbia,* ("*Heller III*"), 801 F.3d 264
(D.C. Cir. 2015)......................................................................44

*Hicklin v. Orbeck*, 437 U.S. 518  (1978) ................................................63

*Hodge v. Talkin*, 799 F.3d 1145 (D.C. Cir. 2015................................56-57

*INS v. Chadha*, 462 U.S. 919 (1983)................................................27, 35

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Jeannette Rankin Brigade v. Chief of Capitol Police*,
342 F. Supp. 575 (D.D.C.) (three-judge panel),
    *aff'd.* 409 U.S. 972 (1972) ...................................................... 41, 53, 54

*Jeanette Rankin Brigade v. Chief of the Capitol Police*,
421 F.2d 1090 (D.C. Cir. 1969)................................................. 45, 52, 54

\* *Kachalsky v. Cnty of Westchester*, 701 F.3d 81 (2d Cir. 2012) ... 37, 38, 41

\* *Klein v. San Diego Cty.*, 463 F.3d 1029 (9th Cir. 2006) ................... 58, 60

*Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) ...................... 35

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)................................ 36

*Menna v. New York*, 423 U.S. 61 (1975) ................................................ 21

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) .................................... 51

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) ........... 25

\* *National Rifle Association of America, Inc., v.
Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
700 F.3d 185 (5th Cir. 2012) ("*NRA v. BATF*")........................... 39, 41, 45

*Neild v. District of Columbia*, 110 F.2d 246 (D.C. Cir. 1940)................ 63

*Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014).......3-4

\* *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) ........................38-39

*Powell v. Tompkins*, 783 F.3d 332 (1st Cir. 2015) .................................. 35

\* *Robertson v. Baldwin*, 165 U.S. 275 (1897) ............................................ 38

\* *Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013) ... 16, 31, 33, 34, 48, 55

\* *Tollett v. Henderson*, 411 U.S. 258 (1973) ........................................ 20, 22

\* *United States v. Baucum*, 80 F.3d 539 (D.C. Cir. 1996) .............. 26-28, 31

\* *United States v. Broce*, 488 U.S. 563 (1989) ........................................ 28

\* *United States v. Cabrera*, 379 F. App'x 24 (2d Cir. 2010) ........................ 23

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ........................ 34

*United States v. Delgado-Garcia,* 374 F.3d 1337 (D.C. Cir. 2004) ......... 21

\* *United States v. Dorosan*, 350 F. App'x. 874 (5th Cir. 2009) ....... 40, 46, 53

\* *United States v. Drew*, 200 F.2d 871 (D.C. Cir. 2000) ................ 28, 31, 32

*United States v. Grace*, 461 U.S. 171 (1983) ........................................ 50

*United States v. Gurr*, 471 F.3d 144 (D.C. Cir. 2006) ............................ 24

*United States v. Kelly*, 552 F.3d 824 (D.C. Cir. 2009) ............................ 28

*United States v. Kokinda*, 497 U.S. 720 (1990) ...................................... 50

*United States v. Law*, 528 F.3d 888 (D.C. Cir. 2008) ............................ 62

*United States v. Mahin*, 668 F.3d 119 (4th Cir. 2012) ...................... 53, 55

\* *United States v. Masciandaro*, 638 F.3d 458 (4th Cir.) ..... 35, 37,44-45, 53

\* *United States v. Miranda,* 780 F.3d 1185 (D.C. Cir. 2015) ......... 21, 25-27

*United States v. Moreno*, 84 F.3d 1452 (Table),
1996 WL 250328 (D.C. Cir. 1996) .................................................... 32

*United States v. Phillips*, 645 F.3d 859 (7th Cir. 2011) .......................... 26

\* *United States v. Ramos*, 492 F. App'x. 688 (7th Cir. 2012) ...................... 22

*United States v. Salerno*, 481 U.S. 739 (1987).................................26, 37

*United States v. Seay*, 620 F.3d 919 (8th Cir. 2010) ...............................28

*United States v. Vasquez-Martinez*, 616 F.3d 600 (6th Cir. 2010) .........23

*United States v. Williams*, 553 U.S. 285 (2008)................................56-57

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ..............................58

*Washington Mobilization Comm. v. Cullinane*,
    566 F.2d 107 (D.C. Cir. 1977)............................................................59

# OTHER AUTHORITIES

18 U.S.C. § 3146(a)(1) ................................................................ 12

18 U.S.C. § 3742 ........................................................................ 12

18 U.S.C. § 921(3) ...................................................................... 65

18 U.S.C. § 922(g)(1) .................................................................. 16

18 U.S.C. § 930 ......................................................... 18, 25, 30, 64, 65

18 U.S.C. § 930(a) ...................................................................... 64

18 U.S.C. § 930(h) ...................................................................... 64

18 U.S.C. § 3231 ........................................................................ 27

40 U.S.C. § 5102(a) .................................................................... 57

40 U.S.C. § 5102(c)(1)(C) ......................................................... 58-59

40 U.S.C. § 5104 ........................................................................ 65

40 U.S.C. § 5104(a)(4) ................................................................ 65

40 U.S.C. § 5104(e)(1) ...................................................... 1, 3, 4, 11, 32

D.C. Code § 22-4504(a) .............................................................. 3, 12

Fed. R. App. P. 4(a)(2) ................................................................. 4

Fed. R. Crim. P. 11(a)(2) ......................................................... 20, 22, 23

# ISSUES PRESENTED

I.     Whether the Court should decline to hear appellant's statutory and constitutional claims, where appellant entered an unconditional guilty plea; the issues presented on appeal arose before the plea and do not affect subject-matter jurisdiction or the ability to hale appellant into court; in addition, no objection was made in the district court as to one issue; and the case presents issues of first impression under the Second Amendment.

II.    Whether, assuming appeal has not been waived, the Second Amendment immunizes appellant from prosecution for Possession of a Firearm on Capitol Grounds under the Capitol Grounds security statute, 40 U.S.C. § 5104(e)(1), where appellant left two fully loaded handguns, a fully loaded rifle, and numerous rounds of ammunition concealed in his vehicle, which was unlawfully parked in a permit-only parking lot reserved for employees of the U.S. House of Representatives, within the boundaries of the Capitol Grounds and around the corner from the Rayburn House Office Building.

III.   Whether, assuming appeal has not been forfeited or waived, the Capitol Grounds security statute gives constitutionally sufficient

notice of its boundaries, where the boundaries are defined by reference to the marked streets of the District of Columbia and the parking lot at issue is within the street boundaries expressly set forth at 40 U.S.C. § 5102(c)(1)(C).

IV.    Whether, assuming appeal has not been waived, appellant's prosecution violates the Equal Protection or Privileges and Immunities Clause, where there is no evidence that the Capitol Grounds security statute, a federal law, is applied differently to similarly situated individuals or on the basis of an individual's state of residence.

V.    Whether, assuming appeal has not been waived, appellant's conviction should be invalidated because the record does not show compliance with the notice provisions of 18 U.S.C. §§ 930(a) & (h), or the definition of "firearms" contained in the Firearms Act of 1934, where appellant was not prosecuted under either of those laws and neither law was incorporated into the statute under which he was convicted.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

No. 15-3015

————————————

UNITED STATES OF AMERICA,                                  Appellee,

     v.

RODNEY CLASS,                                  Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————

BRIEF FOR APPELLEE

————————————

This appeal follows appellant's unconditional guilty plea to Unlawful Possession of a Firearm on Capitol Grounds under 40 U.S.C. § 5104(e)(1). Appellee, the United States of America, hereby responds to the arguments made by the *pro se* appellant, Rodney Class, in the document entitled "Certificate of Brief for Appellant and Appendix, Vol.

1," filed on November 4, 2015 (ECF 1582319),[2] and the "Opening Brief of Court-Appointed *Amicus Curiae* in Support of Appellant," filed on November 20, 2015 (ECF 1584600), which was adopted by appellant on November 30, 2015 (ECF 1586291).

## COUNTERSTATEMENT OF THE CASE

Appellant was arrested on May 30, 2013, after United States Capitol Police officers determined that there were guns and knives concealed inside appellant's Jeep, which was unlawfully parked in a restricted parking lot on the southwest side of the Capitol lawn by the United States Botanic Garden, within the Capitol Grounds (J.A. 101-103).

On May 31, 2013, appellant was charged by complaint in District of Columbia Superior Court with Carrying a Pistol under D.C. Code §

---

[2] Appellant filed on March 10, 2015, an opening brief that raises the same issues as those raised in the brief filed on November 4, 2015. *See* ECF 1543014. Because the November brief appears to contain more detail, the government construes it as a superseding opening brief.  In August and September 2015, appellant also filed two additional pleadings, which were docketed as supplements to the March 2015 brief. See ECF 1576204 and ECF 1576217. The government does not address those additional pleadings separately, because they do not appear to contain new issues or argument.

22-4504(a) (J.A. 104). On September 3, 2013, a grand jury for the United States District Court for the District of Columbia indicted appellant on two charges: Possession of a Firearm on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(1) ("the Capitol Grounds security statute"), and Carrying a Pistol in violation of D.C. Code § 22-4504(a) ("the CP statute") (*id*. at 28-29). Following his initial appearance in district court, appellant was released on conditions and allowed to return to his home in North Carolina pending further court proceedings (*id*. at 1-2; Document 4).

On April 7, 2014, the court granted appellant's request to proceed *pro se*, but appointed the Federal Public Defender, A.J. Kramer, to act as stand-by counsel (J.A. 7, 73).

On September 9, 2014, the court granted the government's motion to dismiss without prejudice Count Two of the indictment, which charged a violation of the CP statute under District of Columbia law (J.A. 17, 122-123).[3]

---

[3] The government's motion followed the decision in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), which enjoined the District and its agents from "enforcing D.C. Code § 4504(a) unless and until such time as the District of Columbia adopts a licensing mechanism

(continued . . . )

3

Appellant failed to appear for trial on October 27, 2014, after notifying the court by letter that he would no longer participate in the court proceedings (Supplemental Appendix ("S.A.") 67-69). After a bench warrant was issued, appellant was re-arrested in North Carolina and returned to this district (J.A. 21-22). On November 21, 2014, he was arraigned on a superseding indictment that again charged Possession of a Firearm on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(1) (*id.* at 21).

On November 21, 2014, appellant entered an unconditional guilty plea to Possession of a Firearm on Capitol Grounds (J.A. 23, 152-161 (plea agreement), 162-163 (plea proffer)). Chief Judge Roberts sentenced appellant to 24 days of time served and 12 months of supervised release on March 3, 2015 (*id.* at 165-169).

Appellant filed a notice of appeal on February 13, 2015, which is treated as filed "on the date of and after the entry" of judgment, *see* Fed. R. App. P. 4(a)(2), and thus considered timely.

---

(. . . continued)

consistent with constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Id.* at 183.

## The Circumstances of Appellant's Arrest

In its responses to various motions, the government proffered that its evidence would show the following:[4]   On May 30, 2013, at approximately 11:30 a.m., appellant parked his Jeep Rubicon in a permit-only parking lot on the southwest side of the Capitol near the U.S. Botanic Garden (J.A. 101, 125). The parking lot, located on Maryland Avenue, S.W., between First and Third Streets, was reserved for use by employees of the House of Representatives (*id*. at 125 n.1). Signs warned that parking was for permit-holders only and there were other visible indicators of restricted access, including a guard station and street barriers (*id*.). The Capitol was within eyesight (*id*.).

Appellant chose that parking area because it gave him ready access to House and Senate office buildings (J.A. 129) ("It was an easy walk through."). After parking there, he walked to the Capitol and House and Senate office buildings where he had paperwork purporting to appoint him a "Private Attorney General" stamped at the offices of various committees and Members of Congress (*id*. at 125).

---

[4] Unless otherwise noted, appellant did not contest these factual assertions.

While appellant was in the Capitol and congressional office buildings, United States Capitol Police Special Agent La'neeka Manning noticed appellant's Jeep parked in the permit-only parking area (J.A. 125). The Jeep did not have a parking permit displayed on the front windshield (*id.*). Through the windows of the Jeep, she saw a machete strapped to the roll bar and what appeared to be a holster in the map pocket of the driver's-side door (*id.*). Agent Manning radioed for assistance from additional officers (*id.*). A records search for the registered owner of the Jeep uncovered the name and a photograph of appellant (*id.*).

At approximately 1:30 p.m., appellant left the Capitol building and walked back to the parking lot (J.A. 125). As he approached the Jeep, Capitol Police officers asked him if his name was Rodney Class and whether the Jeep belonged to him (*id.*). Appellant confirmed his name and his ownership of the Jeep (*id.*). A consensual frisk revealed that appellant did not have any weapons on his person; he told the officers that there were weapons in the Jeep (*id.* at 102).

Shortly thereafter, the officers arrested appellant on a charge of carrying a dangerous weapon (J.A. 103). Appellant initially consented to

a search of his Jeep, but withdrew that consent (*id*.). The officers obtained a search warrant and, during the subsequent search of the Jeep, found two loaded pistols, a loaded rifle, over 200 rounds of ammunition, 15 knives, and three axes (*id*.).

After his arrest, appellant was interviewed at Capitol Police headquarters by FBI agents (J.A. 126). He told the agents that he went to the Capitol and to House and Senate office buildings to have a "Commission by Declaration" signed; he was a "Constitutional Bounty Hunter" and a "Private Attorney General"; and he traveled around the country with his guns and other weapons to enforce the federal criminal code against judges who he believes had broken the law (*id*.). Appellant also said that he planned to take his weapons with him to bring charges against a federal judge in Pennsylvania, but he did not intend to use the weapons against the judge (*id*.).[5]

---

[5] In motions and subsequent hearings, appellant claimed that the search of his Jeep violated his Fourth Amendment rights because it was conducted without a valid warrant, and that his statements were taken in violation of his Fifth Amendment rights. See, e.g., J.A. 50, 61, 64-65. He does not pursue those claims on appeal.

7

## Appellant's Pre-Trial Motions

Although represented by appointed counsel at the start of his case, appellant filed a multitude of *pro* se motions seeking, *inter alia*, dismissal of the criminal case, leave to release his appointed counsel and represent himself, and miscellaneous civil relief (J.A. 2-6). The Honorable Gladys Kessler held a motions hearing on April 7, 2014, to address 36 of appellant's then-pending motions (*id.* at 55).  Following that hearing, the court granted appellant leave to represent himself and appointed the Federal Public Defender, A.J. Kramer, to act as stand-by advisory counsel (*id.* at 7, 73).

On April 16, 2014, the court decided many of the motions addressed at the hearing, but ordered the government to respond to four specific motions, which challenged the sufficiency of the grand-jury indictment and the legality of this prosecution under the Second, Fourth, Fifth and Fourteenth Amendments, and Article 4 of the Constitution (J.A. 99-100). The government responded to those motions on May 1, 2014 (*id.* at 101-121).

As relevant to this appeal, appellant claimed that his prosecution was invalid under full-faith-and-credit and equal- protection   principles

8

because he had a valid license from North Carolina to carry firearms (e.g., J.A. 59-60; S.A. 8); the District of Columbia firearms statute had been found unconstitutional by the Supreme Court (e.g., S.A. 16, 19) (citing *District of Columbia v. Heller* ("*Heller*"), 554 U.S. 570 (2008)); the guns he possessed did not meet the federal definition of firearms (e.g., S.A. 16-17, 19-20; and he was being prosecuted for exercising constitutionally protected rights under the Second Amendment (e.g., S.A. 6-7, 30, 33).

In its response, the government asserted that, although the Supreme Court held in *Heller* that the Second Amendment protects an individual right to keep and bear arms, particularly a right by "law-abiding, responsible citizens to use arms in defense of hearth and home" (J.A. 106) (quoting *Heller*, 554 U.S. at 635), the Court specifically noted that the right secured by the Second Amendment is "not unlimited" and was not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (J.A. 108) (quoting *Heller* 554 U.S. at 626).  The government also argued that appellant "may not invoke the Second Amendment to protect any alleged right to carry a concealed weapon in a sensitive area, on government property,

such as the grounds of the United States Capitol" (J.A. 112). The Supreme Court in *Heller* referred to laws forbidding the carrying of firearms in "sensitive places" as "presumptively lawful" under the Second Amendment (*id*.) (quoting *Heller*, 554 U.S. at 626). In addition, the government asserted that the carrying of concealed firearms, as occurred in this case, historically did not fall within the right protected by the Second Amendment (*id*. at 113).

The government also responded to appellant's claim that, because he held a North Carolina license to carry firearms, his prosecution violated the Equal Protection and the Privileges and Immunities Clauses (J.A. 113-116). Appellant did not state a violation of the Equal Protection Clause because there had been no showing that individuals who were similarly situated were treated differently (*id*. at 114). Moreover, the Privileges and Immunities Clause addresses the obligations of the States to observe the rule of comity with respect to residents of other States, and does not affect the powers of Congress, which has plenary authority in the District of Columbia (*id*.).

Before Judge Kessler ruled on these motions, the case was reassigned to Chief Judge Richard Roberts (J.A. 12). Chief Judge

Roberts intended to address those motions, as well as appellant's motions seeking to suppress evidence under the Fourth and Fifth Amendments, before jury selection on the October 27, 2014, trial date (S.A. 61-62). Appellant deliberately failed to appear for trial on that date (*id*. at 59),[6] which resulted in the court not being able to resolve fully the Fourth and Fifth Amendment claims (*id. at* 61-62). Because appellant's Second Amendment arguments did not appear to require an evidentiary hearing, the court concluded that it would not impair appellant's interests to rule on that issue in his absence (*id*. at 69-74). The court denied the Second Amendment claim because the Supreme Court held in *Heller* that laws prohibiting the carrying of firearms in "sensitive places, such as government buildings" were "presumptively lawful," and appellant "has not provided any evidence to rebut the presumption that Section 5104(e)(1) does not burden conduct protected

---

[6] In a letter to the court, appellant said:

> Because I am a private citizen of the United States of America, I will no longer be appearing in a public court due to a lack civilian [sic] due process and thus personal jurisdiction, once again, to protect the public, as well as to safeguard my private citizenship status, by refusing to submit to any Marshal process, civil or criminal, federal or state. S.A. 68.

by the Second Amendment" (*id.* at 74). See also *id.* ("Although his motions have been construed generously, [appellant] would have to provide more than bold assertions to support his Second Amendment claim against the federal statute.").

## Appellant's Guilty Plea

After appellant was re-arrested and returned to this district, the government extended a plea offer under which appellant would plead guilty to one count of Possession of a Firearm on U.S. Capitol Grounds in exchange for the government's agreement not to bring charges of Carrying a Pistol, in violation of D.C. Code § 22-4504(a), or Failure to Appear for Trial, in violation of 18 U.S.C. § 3146(a)(1) (J.A. 152-153). The government also agreed to a two-level reduction in base offense level for acceptance of responsibility, declined  to request to request an upward departure from the suggested sentencing guidelines range, and promised to cap its allocution at the lower end of the guidelines range (*id.* at 153-155).

In return, appellant also agreed to waive his right to appeal his sentence under 18 U.S.C. § 3742, or to file collateral challenges to the conviction or sentence, except to the extent a collateral motion would be

based on newly discovered evidence or a claim of ineffective assistance of counsel (J.A. 157-158). He did not reserve the right to directly appeal any issue that arose before the plea. See *id.* Appellant accepted the agreement on November 16, 2014 (*id.* at 161).

Appellant also adopted the government's proffer of evidence (J.A. 153). He agreed that, on May 30, 2013, he parked his Jeep "in the 200 block of Maryland Avenue, S.W., Washington, D.C., which is part of the Capitol Grounds," and that the Jeep contained the following:

- In an unlocked grey bag on the passenger seat, a 9mm Ruger firearm loaded with 8 rounds, including one round in the chamber, plus, in other areas, several loaded magazines containing 35 additional 9mm rounds, and a box of 50 additional 9mm rounds;

- In an unlocked large bag in the passenger area, a .44 caliber Taurus firearm loaded with seven rounds, including one round in the chamber, plus an additional 90 rounds of .44 caliber ammunition;

- In an unlocked bag between the passenger area and the rear of the vehicle, a .44 caliber Henry firearm loaded with 11 rounds, including one round in the chamber, plus an additional 55 rounds of .44 caliber ammunition. (J.A. 162-163.)

During the November 21, 2014, Rule 11 plea colloquy, appellant stated under oath that, although he was proceeding *pro se*, he had consulted with his stand-by counsel and was satisfied with counsel's

service, and that he understood the nature of the charge to which he was pleading guilty, the potential penalties, and the trial rights that he was relinquishing (S.A. 90, 92-93, 99-102, 107-113).

Appellant also repeatedly acknowledged his understanding that, by pleading guilty, he was giving up his ability to appeal his conviction, except to the extent that he claimed that his plea was unlawful or involuntary. For example, the court and appellant engaged in the following exchange:

> THE COURT:  If you went to trial and you were convicted, you would have a right to appeal your conviction to the Court of Appeals and to have a lawyer help you prepare your appeal. Do you understand that?
>
> [APPELLANT]: Yes.
>
> THE COURT:  Do you know what I mean by your right to appeal?
>
> [APPELLANT]: Yeah. Take it to the next court up.
>
> THE COURT:  All right.
>
> Now, by pleading guilty, you would be generally giving up your rights to appeal.  Do you understand that?
>
> [APPELLANT]: Yes.
>
> THE COURT:  Now, there are exceptions to that.
>
> You can appeal a conviction after a guilty plea if you believe that your guilty plea was somehow unlawful or

involuntary or if there is some other fundamental defect in these guilty-plea proceedings.

You may also have a right to appeal your sentence if you think the sentence is illegal. Do you understand those things?

[APPELLANT]: Yeah. Pretty much.

THE COURT:   Now, if you plead guilty in this case and I accept your guilty plea, you'll give up all of the rights I just explained to you, aside from the exceptions that I mentioned, because there will not be any trial, and there will probably be no appeal. Do you understand that?

[APPELLANT]: Yes.

S.A. 102-103; see also *id.* at 105 (confirming willingness to give up appeal rights except for exceptions discussed), 114-115 (appellant agrees he is giving up right to appeal conviction and sentence, except if sentences exceeds statutory maximum or claims are based on ineffective assistance of counsel or newly discovered evidence).

Finding that the plea was knowing, voluntary, and supported by the facts, the court accepted the plea (S.A. 117).

## SUMMARY OF ARGUMENT

The Court should decline to address appellant's and *Amicus's* arguments because appellant entered an unconditional guilty plea and thus has waived appellate review of any claim that arose before his

15

plea. Contrary to *Amicus*'s argument, it is not necessary for the plea agreement to contain an explicit waiver of appellate review of such claims; the guilty plea itself effects a waiver as a matter of law. Although there are limited exceptions to this waiver principle, neither appellant nor *Amicus* argues, nor could they show, that the issues they raise are exempt from waiver because they involve subject-matter jurisdiction or appellant's ability to be haled into court to answer the charge. This Court should "leave the resolution of [the] difficult constitutional questions [presented by this case] to a case where the issues are properly raised and fully briefed." *Schrader v. Holder*, 704 F.3d 980, 991 (D.C. Cir. 2013) (declining to consider unpreserved as-applied challenge to constitutionality of 18 U.S.C. § 922(g)(1)).

Even if the Court were to entertain the claims presented by appellant and *Amicus*, the claims would fail. It is not necessary to decide whether, and to what extent, the Second Amendment's protections extend outside the home. Under any view, appellant may not invoke the Second Amendment to challenge restrictions on the carrying of concealed firearms, or on the possession of firearms in sensitive places such as the Capitol Grounds. In any case, the Capitol

16

Grounds security statute had a *de minimis* effect on this appellant's Second Amendment rights. The Capitol Grounds security statute does not seriously infringe constitutional rights when enforced against a person who possesses concealed firearms in a place where he is not entitled to be; that is, a government-owned parking lot reserved for the use of Congressional employees.

Given the nature of the conduct being regulated and the limited burden on Second Amendment rights as applied to appellant, the statute is subject to intermediate scrutiny. The statute serves the substantial government interests of protecting Members of Congress and their staffs at their work site, the members of the public who visit them there, and the members of the public who congregate there in public demonstrations. Because the statute is sufficiently tailored to advance those interests without significantly interfering with Second Amendment rights, it passes constitutional muster.

The statute also is not unconstitutionally vague. Its text describes the boundaries of the Capitol Grounds in a way that clearly includes the parking lot where appellant left his firearms.  Appellant's remaining

statutory and constitutional claims are either misguided or undeveloped, and do not entitle him to any relief.

## ARGUMENT

## I.  Appellant Waived Appeal of His Claims by Entering an Unconditional Guilty Plea.

Liberally construed, appellant's arguments appear to be that his conviction should be overturned because: 1) the local District of Columbia gun laws were declared unconstitutional under the Second Amendment;[7] 2) the ruling that the District of Columbia gun law was unconstitutional applies to "the whole '10-mile square' of the District" and there are "no warning signs posting restrictions or prohibitions in these areas";[8] 3) the Americans with Disabilities Act, and the Equal Protection and Privileges and Immunities Clauses were violated because he is physically disabled;[9] 4) the Equal Protection and

---

[7] See App.Brf. at 12-13 (Issues One and Five); *id.* at 17-19, 29.

[8] See App.Brf. at 12 (Issue Two). This may include appellant's argument that the absence of signs in the parking lot where he was arrested saying that firearms were prohibited violates the statutory notice requirement of 18 U.S.C. § 930.  See, e.g., *id.* at 19-21, 27.

[9] See App.Brf. at 12 (Issue Three); *id.* at 29.

Privileges and Immunities Clauses were violated because he held a valid North Carolina license to carry a firearm on the day of his arrest;[10] and 5) the handguns and rifle he possessed on Capitol Grounds are not "firearms" under federal law.[11]   Appellant also has adopted *Amicus'* arguments: 1) the Capitol Grounds security statute, as applied to appellant, violates the Second Amendment; and 2) the definition of Capitol Grounds is unconstitutionally vague.

The Court should decline to review any of the issues raised by appellant and *Amicus* because the issues were waived by appellant's unconditional guilty plea and, as to the constitutional vagueness claim, also by the failure to raise that claim in district court.

---

[10] See App.Brf. at 12-13 (Issue Four); *id.* at 18-19, 26-27.

[11] Although not listed in his Issues Before the Appeals Court, appellant makes specific arguments about this statutory issue in his brief (App.Brf. at 21-23, 28), and Judge Kessler ruled on it in her April 16, 2014, opinion and order (J.A. 91-92).

### A.  Applicable Legal Principles and Standard of Review

In general, a guilty plea acts as a waiver of all claims, including constitutional claims, that existed before the plea was entered. *Tollett v. Henderson*, 411 U.S. 258, 266-68 (1973). As the Supreme Court held:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

*Id.* at 267.

Although a defendant may condition his plea on an express reservation of the right to appeal his conviction, *see* Fed. R. Crim. P. 11(a)(2),[12] "[u]nconditional guilty pleas that are knowing and intelligent . . . waive the pleading defendant['s] claims of error on appeal, even constitutional claims." *United States v. Delgado-Garcia,* 374 F.3d 1337,

---

[12] Rule 11(a)(2) provides:

> (2) Conditional Plea. With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

1341 (D.C. Cir. 2004). "There are two recognized exceptions to this rule [: . . .] the defendant's claimed right 'not to be haled into court at all[,]'" *id*. (citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) and *Menna v. New York*, 423 U.S. 61, 62 (1975) (*per curiam*)), and a claim "that the court below lacked subject-matter jurisdiction over the case." *Id. Accord United States v. Miranda,* 780 F.3d 1185, 1188-89 (D.C. Cir. 2015).

This Court reviews *de novo* whether a right to appeal has been waived by a guilty plea. *See Miranda*, 780 F.3d at 1188-1190.

### B.    Appellant's Unconditional Guilty Plea Waived Appeal.

Appellant entered a knowing and voluntary guilty plea (S.A. 90-117), and he does not contend otherwise.[13] That plea alone constitutes a waiver of the claims he now raises on appeal.

Appellant's *pro se* brief does not address his waiver. Citing only one out-of-Circuit decision, *Amicus* asserts that, because appellant did not explicitly waive direct appeal of his conviction in the written plea

---

[13] Following the plea hearing, appellant filed a Motion for Discharge and Termination, J.A. 24, which Chief Judge Roberts denied, finding no infirmities in the guilty plea (S.A. 134-135). Appellant does not contest that ruling or otherwise challenge the validity of his plea.

agreement, he has preserved all of his appeal rights (Am.Brf. 15-16) (citing *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000)). *Amicus* confuses the effect of a valid guilty plea on the ability to raise claims that existed before the plea with the ability to raise claims that arise from the plea itself or after the plea, such as at sentencing.

Where a nonjurisdictional issue arises before a defendant pleads guilty, the plea itself effects a waiver of the right to appeal that antecedent issue as a matter of law; "[n]o explicit waiver is required." *United States v. Ramos*, 492 F. App'x. 688, 689 (7th Cir. 2012). "A guilty plea, even without a plea agreement, forecloses inquiry into any pre-plea, nonjurisdictional issues that the defendant has not specifically reserved the right to raise on appeal . . . ." *Id*. (citing *Tollett*, 411 U.S. at 266-67) (other internal citation omitted). Where, as here, an appellant does not seek to withdraw his guilty plea, "the only relevant question about his plea agreement is whether it explicitly reserves his right to challenge" the pre-plea issues he now raises on appeal. *Id*. Appellant's plea agreement does not contain such a reservation (see J.A. 157-158).

The requirement that a defendant must affirmatively reserve the right to appeal a pre-plea issue is codified in Fed. R. Crim. P. 11(a)(2),

which allows a defendant to enter a guilty plea conditioned on his right to appeal an antecedent issue, so long as he does so in writing and has the consent of the government and the court. See *supra* at 20 n.12. "Rule 11(a)(2) makes clear that, by entering a plea of guilty, a defendant automatically waives his right to appeal from prior adverse determinations unless *the defendant* takes affirmative steps to reserve appellate review." *United States v. Cabrera*, 379 F. App'x 24, 27 (2ᵈ Cir. 2010) (emphasis in original); *accord United States v. Vasquez-Martinez*, 616 F.3d 600, 604 (6ᵗʰ Cir. 2010) (it is "elemental" that a defendant must affirmatively reserve the right to appeal pre-plea issues). Appellant's failure to explicitly reserve the right to appeal the pre-plea issues he now presents to this Court waives that right.

Because waiver of pre-plea issues is automatic unless a defendant explicitly reserves his right to appeal, cases announcing the general proposition that plea agreements will be interpreted strictly (Am.Brf. 15) are inapposite. *Amicus*'s reliance on the *Bridgeman* case is particularly misplaced because that case does not address waiver of pre-plea issues. *See Bridgeman*, 229 F.3d at 591 (holding that, because the appellant expressly waived only the right to collaterally attack his

sentence, he did not waive the ability to pursue a collateral claim of ineffective assistance of counsel in connection with his guilty plea). Moreover, appellant was not confused about the effect of the plea agreement on his ability to appeal pre-plea issues. As the plea colloquy illustrates, he was fully aware that, simply by entering a guilty plea, he would be giving up his right to appeal his conviction and any issues that did not affect the validity of his plea or sentence. See *supra* at 14-15. That knowing waiver of appeal should be enforced.

## C.    No Exception to Waiver Applies in This Case.

Although, in certain limited circumstances, an otherwise valid waiver of appeal rights will not be enforced, see *supra* at 21, neither appellant nor *Amicus* argues that the claims in this case are exempt from waiver for any reason. Their failure to do so waives the exemption argument. *United States v. Gurr*, 471 F.3d 144, 152 n.3 (D.C. Cir. 2006) (argument raised for first time in reply brief is waived).

In any event, appellant's and *Amicus's* statutory and constitutional challenges to the Capitol Grounds security statute are not exempt from waiver because they do not impair the court's subject-matter jurisdiction or the ability to hale appellant into court.

24

## 1.    The    Statutory    Claims    Are    Not Exempt From Waiver.

Appellant contends that the provisions of 18 U.S.C. § 930 entitled him to posted notice regarding the Capitol Grounds firearms prohibition and that his weapons were not "firearms" under federal law. See *supra* at 18-19. The *Blackledge/Menna* exception does not apply to a non-constitutional claim. *Miranda*, 780 F.3d at 1191. Therefore, appellant "can avoid waiver only if [his] statutory argument[s] go[ ] to the subject-matter jurisdiction of the court." *Id.*  They do not.

Appellant argues that the Capitol Grounds security statute did not prohibit his conduct because he did not receive the allegedly required statutory notice and his weapons did not meet the definition of "firearms." "'[T]o ask what conduct [a statute] prohibits . . . is a merits question,'" not a subject-matter-jurisdiction question. *Miranda*, 780 F.3d at 1191(quoting *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010)). Such merits-based arguments have no effect on the power of the court to hear the case; the court still has subject-matter jurisdiction "to adjudicate the question whether [Section 5104(e)] applies to [appellant's] conduct." *Morrison*, 561 U.S. at 254. Therefore, the statutory claims are waived.

25

## 2.  The Constitutional Challenges Do Not Affect Subject-Matter Jurisdiction.

Appellant's and *Amicus's* as-applied constitutional challenges in this case[14] do not undermine the court's subject-matter jurisdiction. "[A]n as-applied challenge does not dispute the court's power to hear cases under the statute; rather, it questions the court's limited ability to enter a conviction in the case before it." *United States v. Phillips*, 645 F.3d 859, 862-63 (7th Cir. 2011); *accord Miranda*, 780 F.3d at 1189-91 (finding that as-applied constitutional arguments did not affect subject-matter jurisdiction).

Facial constitutional challenges to statutes that have not been held to be unconstitutional do not divest a court of subject-matter jurisdiction. *United States v. Baucum*, 80 F.3d 539, 540 (D.C. Cir. 1996) (*per curiam*). "Congress has granted the district courts general subject-

---

[14] Appellant raises as-applied challenges to his conviction under the Equal Protection and Privileges and Immunities Clauses. He adopts the as-applied Second Amendment arguments and the void-for-vagueness argument made by *Amicus*. Neither Appellant nor *Amicus* argues that, under the Second Amendment, the firearms provision of the Capitol Grounds security statute is facially unconstitutional, that is, "that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

matter jurisdiction over 'all offenses against the laws of the United States' under 18 U.S.C. § 3231." *Miranda*, 780 F.3d at 1189. "When a federal court exercises its power under a presumptively valid federal statute, it acts within its subject-matter jurisdiction pursuant to § 3231." *Baucum*, 80 F.3d at 540. The firearms provision of the Capitol Grounds security statute, "having never been declared unconstitutional, enjoy[s] a presumption of validity." *Id.*; *see also INS v. Chadha*, 462 U.S. 919, 944 (1983). Accordingly, none of the constitutional challenges involves subject-matter jurisdiction.

### 3.   The Constitutional Challenges Do Not Fall Within the *Blackledge/Menna* Exception.

"Together, *Blackledge* and *Menna* stand for the proposition that certain constitutional challenges are immune from waiver regardless of whether they raise issues of subject-matter jurisdiction." *Miranda*, 780 F.3d at 1190. In those cases, the Supreme Court held that a guilty plea does not extinguish "a constitutional 'right not to be haled into court at all.'" *Id.* (quoting *Blackledge*, 417 U.S. at 30 (further internal quotation marks omitted)). The Supreme Court later expressly held, however, that a constitutional claim that ordinarily would prevent a defendant

27

from being "haled into court" will not excuse a waiver by guilty plea unless that claim was apparent from the face of the record. *See United States v. Broce*, 488 U.S. 563, 576 (1989) (declining to consider double jeopardy claim following a guilty plea where alleged violation not clear on face of indictment).[15] The *Broce* exception is narrow; it will not excuse the waiver caused by a guilty plea "'[unless] on the face of the record the court had no power to enter the conviction or impose the sentence.'" *United States v. Kelly*, 552 F.3d 824, 829 (D.C. Cir. 2009) (quoting *Broce*, 488 U.S. at 569).

---

[15] Some courts have held that facial (but not as-applied) constitutional challenges to a statute survive under the *Blackledge/Menna* rationale. *See, e.g., United States v. Seay*, 620 F.3d 919, 923 (8th Cir. 2010) (claim that statute was facially unconstitutional under Second Amendment fits within *Blackledge/Menna* exception); *id.* at 922 n.3 (as-applied constitutional challenges do not survive valid guilty plea, even under *Blackledge/Menna*). That reading of *Blackledge/Menna* is in tension with the reasoning of *Baucum* concerning subject-matter jurisdiction and conflicts with other decisions in this Circuit. *See United States v. Drew*, 200 F.2d 871, 876 (D.C. Cir. 2000) (citing *Baucum* and holding that *Blackledge/Menna* exception did not apply to claims that statute violated Second and Fifth Amendments, where defendant did not raise those claims in district court and entered a valid unconditional guilty plea).

Appellant's Second Amendment claim presents an as-applied challenge that would not have been apparent from the face of the indictment or the record. The firearms provision in the Capitol Grounds security statute has never been found to be unconstitutional; it does not affect the core right identified by the Supreme Court in *Heller*; and, as Chief Judge Roberts found, appellant did not put anything in the record to overcome the presumption of legality recognized by the Supreme Court for sensitive government facilities (J.A. 151). Similarly, the record contains nothing that would make apparent either appellant's Equal Protection and Privileges and Immunities claims (see *infra* at 63-64)*,* or *Amicus'*s vagueness claim (see *infra* at 56-61). Thus, none of the claims now raised falls within the narrow *Blackledge/Menna* exception.

## D.   The Void-for-Vagueness Claim Is Also Forfeited Because It Was Not Raised in District Court.

*Amicus* claims that the Capitol Grounds security statute violates the Due Process Clause because it does not clearly define the Capitol Grounds (Am.Brf. 51-56). Independent of the guilty plea waiver, that constitutional vagueness challenge is foreclosed because it was not raised in the district court. *Amicus* asserts that appellant made such a

29

claim (Am.Brf. 3-4), but provides no citation to the record. Although appellant's *pro se* arguments should be liberally construed, they do not fairly support the vagueness challenge.

Appellant nowhere claimed that the Capitol Grounds security statute did not adequately define the Capitol Grounds.    Although appellant sometimes complained about a lack of notice, those complaints were either directed at the local CP statute,[16] tied to other constitutional arguments which were also directed at the local statute, such as the Full-Faith-and-Credit-Clause argument,[17] or based on his mistaken belief that he was being prosecuted under 18 U.S.C. § 930, which requires that the restriction on firearms in a federal building be posted.[18] The closest appellant came to complaining about lack of notice under the federal statute was to express his belief that the Capitol

---

[16] See, e.g.*,* J.A. 39 ("at no time did the District of Columbia post signs that warned the people of it[s] Firearm laws").

[17] See, e.g., J.A. 65 ("I thought I was well within my full faith and credit of rights of having a legal permit. I thought I was right for coming in. I didn't see no signs coming in here that says:  Check your arms because your local police department – there's nothing here that says you can't bring anything in.").

[18] See, e.g., App.Brf. 19-21.

Police dismissed the parking citation issued the day of his arrest because he did not see the signs that restricted parking in the Maryland Avenue parking lot.[19]

Challenges to the constitutionality of a statute ordinarily are forfeited or waived if not raised in district court. *See, e.g., Schrader*, 704 F.3d at 991 (declining to reach as-applied constitutional challenge to federal "felon-in-possession" statute because claim not made in district court); *Drew*, 200 F.3d at 876 (declining to consider Second and Fifth Amendment challenges to conviction of possession of a firearm while subject to a court order, where claims not made in district court and defendant entered unconditional guilty plea); *Baucum*, 80 F.3d 539-544 (declining to entertain Commerce Clause challenge to statute barring drug sales within 1,000 feet of a schoolyard, because claim not made in district court).

If any form of review were available, it would only be for plain error. *See Drew,* 200 F.3d at 882-83 (Edwards, J., concurring); *United*

_____

[19] *See* J.A. 61.

*States v. Moreno*, 84 F.3d 1452 (Table), 1996 WL 250328, *1 (D.C. Cir. 1996) (*per curiam*). It is not "plain or obvious" that Section 5104(e)(1) is unconstitutionally vague. Appellant and *Amicus* have not shown otherwise. Therefore, the vagueness claim is doubly foreclosed. *See Drew,* 200 F.3d at 883; *Moreno*, 84 F.3d 1452, 1996 WL 250328, *1.

********

Declining to hear this case based on appellant's waiver would be prudent as well as justified. The constitutional questions have not been answered by the Supreme Court. They raise difficult issues concerning the scope of the Second Amendment and the ability of Congress to protect its members, staff, and the public who enter the Capitol Grounds, particularly those areas, like the parking lot in this case, that are restricted to the use of Congressional staff and expressly not available to the general public for the use appellant made of it. Appellant's guilty plea not only waived his right to have this Court consider these claims, but it pretermitted the presentation of evidence that would have illuminated the as-applied arguments made by *Amicus* on appellant's behalf for the first time in this appeal. "[J]udicial

restraint is especially important where, as here, constitutional issues are at stake." *Schrader*, 704 F.3d at 992.

## II.    Even If Appellant Has Not Waived His Second Amendment Claim, the Capitol Grounds Security Statute Is Constitutional As Applied To Him.

Even if appellant's claims were not waived, he has not met his burden of demonstrating that the Capitol Grounds security statute is unconstitutional as applied to him. The Second Amendment does not protect appellant's possession of concealed firearms in a sensitive government complex. Any alleged infringement of rights is *de minimis* because appellant had no right to leave his firearms in the Maryland Avenue lot and could easily have avoided the Capitol Grounds firearms restrictions by parking elsewhere. Moreover, even if the Second Amendment is implicated, the statute's restrictions are justified under an intermediate standard of review.

### A.    Applicable Legal Principles and Standard of Review

In *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*"), this Court adopted a "two-step approach" for determining the constitutionality of a statute under the Second Amendment. *Id.* at

1252. *See United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013) (the two-step approach is the majority rule in the federal courts; collecting cases). Because, under *Heller,* certain kinds of firearms regulations "do not govern conduct within the scope of the Amendment," the Court first determines "whether a particular provision impinges upon a right protected by the Second Amendment." *Heller II*, 670 F.3d at 1252. If the conduct in question falls outside the scope of the Second Amendment's protections, then that should "end the matter." *Schrader,* 704 F.3d at 989. If the challenged law does implicate the interests protected by the Second Amendment, the Court proceeds to determine "whether the provision passes muster under the appropriate level of constitutional scrutiny." *Heller II*, 670 F.2d at 1252.

The appropriate level of scrutiny "'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens [the asserted] right.'" *Heller II*, 670 F.3d at 1257 (internal citation omitted). The "core right" identified by the Supreme Court in *Heller* is "'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Schrader*, 704 F.3d at 989 (quoting *Heller*, 554 U.S. at 635). "[A] regulation that imposes a substantial burden

upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify." *Heller II*, 670 F.3d at 1257.

Statutes are presumed to be constitutional. *INS v. Chadha*, 462 U.S. at 944. The party challenging the statute "bears the burden of demonstrating its unconstitutionality." *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001) (citation omitted).

## B.    Appellant's Conduct Falls Outside the Scope of the Second Amendment.

Appellant assumes, and *Amicus* asserts, that the Second Amendment protects the right to carry firearms outside the home to the same extent as the right to possess a firearm inside the home for lawful self-defense (Am.Brf. 18-25).  However, the degree, if any, to which the Amendment's protections extend beyond the home was not addressed by the Supreme Court in *Heller*. There is significant debate among courts on this question.  *See Powell v. Tompkins*, 783 F.3d 332, 348 (1st Cir. 2015) (collecting cases). This Court need not, and should not, enter such unsettled territory to decide this case. *See United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir.) ("On the question of *Heller's*

applicability outside of the home environment, we think it prudent to await direction from the Court itself.").

Even assuming that the Second Amendment applies outside the home, that right, just like the right inside the home identified in *Heller*, is not without limits. Although the Supreme Court in *Heller* did not "undertake an exhaustive analysis [ ] of the full scope of the Second Amendment," it stressed that the right afforded by the Second Amendment "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626. *Accord McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).

Appellant may not invoke the Second Amendment for two reasons: (1) historically there was no right to carry concealed firearms, *Heller*, 554 U.S. at 626; and (2) restrictions on the possession of firearms in "sensitive places" are presumptively lawful. *Id*. Appellant and *Amicus* do not address the import of appellant's carrying of concealed weapons, and their arguments do not overcome the presumption that the prohibition on carrying firearms on the Capitol Grounds – the site of the nation's legislative business -- is lawful.

36

### 1.  Appellant's Carrying of Concealed Firearms Is Not Protected by the Second Amendment.

In his plea agreement, appellant admitted that the two loaded handguns and the loaded rifle he brought to the Capitol Grounds parking lot on Maryland Avenue were contained in unlocked gun bags. See *supra* at 13. *Amicus* also agrees that the guns were "out of plain view"(Am.Brf. 2). As applied to appellant, therefore, the firearms provision does not implicate the Second Amendment because the Second Amendment is not offended by a ban on the possession of concealed weapons on Capitol Grounds.[20]

As the Supreme Court has recognized, laws prohibiting the concealed carrying of firearms do not impinge on the right historically protected by the Second Amendment. *See Heller*, 554 U.S. at 626 (observing, as an example of the principle that "the right secured by the

---

[20] Appellant cannot complain that the statute also regulates the open carrying of firearms.  Even assuming, *arguendo*, that the constitutional overbreadth doctrine applies outside the context of the First Amendment, *but see Salerno*, 481 U.S. at 745, one to whom a law can be constitutionally applied cannot complain if it is arguably unconstitutional as applied to others. *See, e.g., Kachalsky v. Cnty of Westchester,* 701 F.3d 81, 101 (2d Cir. 2012*); Masciandaro*, 638 F.3d at 474.

Second Amendment is not unlimited," that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"); *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons") (*dictum*). *See also, e.g., Kachalsky v. Cnty of Westchester*, 701 F.3d 81, 95 & n.1 (2d Cir. 2012) (upholding against Second Amendment challenge state limitations on ability to obtain concealed-carry permit; "Most states enacted laws banning the carrying of concealed weapons" in the nineteenth century.) (collecting statutes).

In *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013), the Tenth Circuit affirmed summary judgment against a non-Colorado resident's claim that Colorado's refusal to issue to non-residents a license to carry a concealed firearm violated the Second Amendment. The court applied the same kind of two-step analysis adopted by this Court in *Heller II*. *Id*. at 1208. Mirroring the Supreme Court's use of historical analysis to determine the meaning and scope of the Second Amendment, the Tenth Circuit examined "'whether the law harmonizes with the historical

traditions associated with the Second Amendment guarantee.'" *Id*. at 1211 (quoting *National Rifle Association of America, Inc., v. Bureau of Alcohol, Tobacco, Firearms, & Explosives* ("*NRA v. BATF*"), 700 F.3d 185, 196 (5th Cir. 2012) (further internal citations omitted)). After surveying the case law and academic literature, the *Peterson* court concluded that "concealed carry bans have a lengthy history," and therefore held that the Second Amendment claim "fails at step one of our two-step analysis: the Second Amendment does not confer a right to carry concealed weapons." *Id*.

Applying *Peterson*, the Tenth Circuit later held that a complete ban on carrying firearms on United States Postal Service ("USPS") property did not impinge on Second Amendment rights at all insofar as it banned concealed firearms. *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (holding also that ban on open carry of firearms was "presumptively lawful" under the Second Amendment because post office and parking lot were "sensitive places," and, in the alternative, that the open-carry portion of the ban survived intermediate scrutiny). For the same reasons, appellant's possession of concealed weapons does not warrant Second Amendment protection.

> ## 2.     A Prohibition on Possessing Firearms in a "Sensitive Place" Like the Capitol Grounds Is "Presumptively Lawful" Under the Second Amendment.

The Supreme Court in *Heller* held that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings;" such restrictions are "presumptively lawful." 554 U.S. at 626. Accordingly, courts have held that prohibitions on the carrying of firearms in government buildings, or on adjacent property used by government workers, do not implicate Second Amendment rights.  *See Bonidy*, 790 F.3d at 1125 (no constitutional violation where regulation banned firearms from post office and adjacent parking lot; treating parking lot as "single unit with the postal building itself to which it is attached and which it exclusively serves"); *see also United States v. Dorosan*, 350 F. App'x. 874, 875 (5th Cir. 2009) (*per curiam*) (upholding "under any applicable level of scrutiny" conviction for bringing a handgun in car on postal property, because the lot was used by Postal Service as "place of regular government business, [and] it falls under the 'sensitive places' exception recognized by *Heller*").

40

The Capitol Grounds security statute is a longstanding, presumptively lawful regulation affecting a sensitive place.[21] The Capitol Grounds are a "sensitive place" because: 1) they are the home of the national legislature; 2) thousands of people visit every year; and 3) they are a focal point for the exercise of First Amendment activities such as public assemblies, protests, and demonstrations. *See Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 584 (D.D.C.) (three-judge panel), *aff'd.* 409 U.S. 972 (1972). Each of these factors justifies regulations that restrict the possession of firearms and other weapons on the Grounds.

Government buildings are sensitive places which require special protection from those who would use guns to disrupt the important work performed inside or harm the workers. *See Kachalsky*, 701 F.3d at 99 (As "*Heller* strongly suggests, the state may ban firearm possession

---

[21] *Amicus* correctly notes that the firearms provision of the Capitol Grounds security statute was adopted in 1967 (Am.Brf. 24). "[A] regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *NRA v. BATF*, 700 F.3d at 196-197 (noting that *Heller* considered bans on possession of firearms by felons and the mentally ill to be longstanding even though federal bans were adopted in the late 1930's and late 1960's, respectively).

in sensitive places, presumably on the ground that it is too dangerous to permit the possession of firearms in those places."). Those important security concerns extend beyond the four walls of a particular building when – as in this case -- that building is located within an enclave of buildings dedicated to the same governmental function. A map of the Capitol Grounds shows that it is a well-defined complex of closely located buildings, virtually all of which are dedicated to the legislative work of Congress (see S.A. 136). Contrary to *Amicus's* view (Am.Brf. 37-39) the sensitive places within the Capitol Grounds are not limited to those buildings. Members of Congress and their staffs routinely traverse the Grounds over the short distances between their office buildings and the Capitol. The Grounds are their collective worksite and, as such, special security restrictions are justified.

*Amicus* appears to accept that an area outside a government building may sometimes be a sensitive place, and gives the White House lawn as one example (Am.Brf. 45 n.12) (citing *Bonidy*, 790 F.3d at 1137 (Tymkovich, J., dissenting)). According to the dissenting opinion on which *Amicus* relies, "[t]he White House lawn, although not a building, is just as sensitive as the White House itself. Consequently,

the presumption of lawfulness for a regulation penalizing firearm possession there might approach the categorical." *Bonidy*, *id*. A similar presumption of lawfulness should apply to firearms restrictions on the government-owned Capitol Grounds that surround and connect the Capitol and congressional office buildings with one another and with other facilities that support their work.

*Amicus* argues that the restricted parking lot where Appellant left his loaded and unsecured firearms is too far from the Capitol building to be treated as a sensitive place (Am.Brf. 45 n.12). Distance alone is not determinative, especially where sensitive buildings are clustered together to serve interrelated, important government functions. In any event, the Capitol is not the only sensitive government building within the Grounds. The Maryland Avenue lot is around the corner and across Pennsylvania Avenue from the Rayburn House Office building, and is visibly much closer to that sensitive government building than to the Capitol (which *Amicus* describes as 1,000 feet away from the lot), (see S.A. 36). Appellant parked in that lot precisely because it was "a short walk through" to the House and Senate Office Buildings (J.A. 129).

In addition, the Capitol Grounds are a "sensitive place" because of the need to protect members of the public who go there as tourists or to communicate with their legislators. *See Masciandaro*, 638 F.3d at 470 ("[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense"). The Maryland Avenue lot is located in an area that attracts public visitors, because it sits behind the U.S. Botanic Garden (S.A. 136). Moreover, it sits beside one of the areas within the Capitol Grounds designated for public demonstrations (see *id.*(areas designated for demonstrations marked in green)), which creates a special need for security. *See Heller v. District of Columbia,* ("*Heller III*"), 801 F.3d 264, 283 (D.C. Cir. 2015) (Henderson, J., concurring in part, dissenting in part) (noting "the unique security risks presented by a city full of high-level government officials, . . . parades, protests and demonstrations").

The Capitol Grounds firearms restrictions are presumptively lawful because the Grounds are a sensitive place.

44

### 3.    Any    Interference    With    Second Amendment Rights Is De Minimis.

Even if the Capitol Grounds security statute implicates rights under the Second Amendment, it does not require further analysis because the effect in this case is *de minimis*.  Unlike the laws struck down by the Supreme Court in *Heller*, the statute here does not impair the ability of an entire city's populace to possess handguns in self-defense in their homes.  Rather, the restrictions apply only to visitors to the Capitol Grounds, an area of "limited geographical scope." *Jeanette Rankin Brigade v. Chief of the Capitol Police*, 421 F.2d 1090, 1093 n.3 (D.C. Cir. 1969). The restriction also applies only for the limited time a visitor chooses to remain on the Capitol Grounds. In this case, the restrictions affected appellant only for a couple of hours. *See NRA v. BATF*, 700 F.3d at 207 (statute restricting certain purchases of firearms by those 18 to 21 years old did not substantially infringe Second Amendment rights, in part because effect was of limited duration).

Nor does the restriction meaningfully affect the right of self-defense. The need to carry firearms for self-defense is minimized because the Capitol Police closely monitor the Grounds. *See Masciandaro,* 638 F.3d at 474 ("[B]ecause the United States Park Police

45

patrol [a national park area], the Secretary [of the Interior] could conclude that the need for armed self-defense is less acute there than in the context of one's home."). The fact that appellant left his guns in his Jeep while he walked through the Grounds also undercuts *Amicus*'s suggestion that he carried the weapons with him that day for "self-protection" (Am.Brf. 49).

Moreover, appellant could have easily avoided the restrictions by not parking in the Maryland Avenue lot. As *Amicus* notes, had appellant parked one block to the west, he would not have been subject to the restrictions at all (Am.Brf. 53). "[Congress] was not obligated by federal law to provide parking for [visitors] . . . . If [appellant] wanted to carry a gun in his car but abide by the ban, he ostensibly could have secured alternative parking arrangements off site." *Dorosan*, 350 F.App'x at 875 (upholding ban on carrying firearms on USPS property as applied to a gun in a car in a USPS parking lot). Such a minor inconvenience does not substantially burden Second Amendment rights. The *de minimis* effect on appellant's rights is underscored by the fact that he was not permitted to park in the Maryland Avenue lot under any circumstances. *Amicus* concedes that '[t]here is no Second

46

Amendment right to carry a weapon in a location where you are not allowed to be in the first place" (Am.Brf. at 45 n.12).

### C.    Assuming That the Firearms Provision Impinges On a Second Amendment Right, It Is Nonetheless Constitutional.

Assuming *arguendo* that the restriction applied to appellant impinges on Second Amendment rights, it nonetheless survives scrutiny under "the appropriate level of constitutional scrutiny," *Heller II*, 670 F.3d at 1252, which in this case is intermediate scrutiny. The Capitol Grounds security statute is based on a substantial interest in protecting the safety of Members of Congress, their staffs, and members of the public. As applied to appellant's conduct, the statute is sufficiently tailored to advance these safety interests.

### 1.    Intermediate Scrutiny Is Appropriate.

*Amicus* (at 25) incorrectly asserts that strict scrutiny is required because the right protected by the Second Amendment is "fundamental." "The [Supreme] Court has not said, . . . , and it does not logically follow, that strict scrutiny is called for whenever a fundamental right is at stake." *Heller II*, 670 F.3d at 1256. Instead, the level of scrutiny "depends on the nature of the conduct being regulated

47

and the degree to which the challenged law burdens that right." *Id.* at 1257 (internal quotation marks and citation omitted).

Even if the imposition on appellant's Second Amendment right were "severe," which it is not, see *supra* at 45-47, "it falls on [an individual] who cannot be said to be exercising the core of the Second Amendment right identified in *Heller*, *i.e.*, 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Schrader*, 704 F.3d at 989 (quoting *Heller*, 554 U.S. at 635). As shown, appellant's conduct does not fall within the core of the Second Amendment because there was no historical right to carry concealed firearms in public. See *supra* at 37-39.

In addition, *Amicus'*s characterization of appellant as a "law-abiding" and "responsible" citizen (Am.Brf. 45) is overstated. Although appellant does not have a record of violent criminal activity, he is not law-abiding. In 2002, appellant was found guilty of Unlawful Possession of a Dangerous Ordnance [firearms] under Ohio Code § 2923.17 (S.A. 138-139).[22] On February 20, 2014, while on conditional release in this

---

[22] The conviction was based on a September 2001 traffic stop in New Philadelphia, Ohio, in which police officers discovered in appellant's

(continued . . . )

case, appellant was arrested after he refused to cooperate with a North Carolina state trooper who conducted a traffic stop on the car appellant was driving; that arrest led to his conviction in May 2014 for resisting a public officer and a traffic violation (S.A. 148-149). And, on October 27, 2014, appellant defied the district court's order in this case to return to court for trial by deliberately refusing to appear on that date. See *supra* at 11. Similarly, the fact that appellant left three fully loaded firearms, 200 rounds of ammunition, and other weapons unattended in unlocked bags in his Jeep for several hours is the antithesis of "responsible."

Intermediate scrutiny also is appropriate because the Capitol Grounds security statute "was not an act of governance – it was a managerial action affecting only government lands." *GeorgiaCarry Org., Inc. v. U.S. Army Corps of Engineers*, 38 F. Supp. 3d 1345, 1376-1377 (N.D. Ga. 2014), *aff'd* 788 F.3d 1318 (11th Cir. 2015). The Supreme Court recognizes, for purposes of constitutional analysis, a distinction

---

(. . . continued)

vehicle two nightsticks containing swords, a sawed-off 12-gauge shotgun with a bandolier containing fourteen 12-gauge shells and 36 slugs, a loaded Ruger Mini 14, a loaded Winchester 30/30 with a round in the chamber, a loaded 12-gauge Mossberg shotgun, and several knives and other edged weapons (S.A. 138).

between a government acting in its role "as proprietor, to manage its internal operations," and government exercising its power as "lawmaker." *United States v. Kokinda*, 497 U.S. 720, 725 (1990). *Amicus* incorrectly characterizes the Maryland Avenue lot as a "public parking lot" (Am.Brf. 17), perhaps to bolster the argument that appellant had an unfettered right to carry his firearms there. Whatever right the Second Amendment might afford to carry firearms in public, that right is significantly diminished, if not extinguished, in a government-owned, non-public parking lot reserved for the use of government employees who work in nearby buildings.[23]

---

[23] *Amicus* tries to minimize Congress's proprietary and safety interests in restricting firearms on the Capitol Grounds, by noting that the Grounds are generally accessible to the public and analogizing them to a "public forum" where First Amendment rights take precedence over a government's proprietary interests (Am.Brf. 47). But, even in the context of First Amendment expressive rights, where exercise of those rights bears little risk of danger to others, "[p]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *United States v. Grace*, 461 U.S. 171, 177 (1983). "The Government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* (internal quotation marks and citation omitted).

In any event, as noted above, the effect on any residual Second Amendment right is minimal in this case. See *supra* at 45-47. When a law "bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state does not need to prove so strong a need." *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012). Appellant does not challenge the firearms restriction insofar as it barred him from carrying his weapons into the Capitol and the congressional office buildings that he visited. Thus, the only burden placed on him was a limitation on where he could choose to park and leave his weapons while he visited those offices, but his choices were already limited by regulations other than the firearms restriction. With or without firearms, appellant had no right to park in the Maryland Avenue lot. *See also GeorgiaCarry.Org, Inc.*, 38 F. Supp. 3d at 1377 (intermediate scrutiny appropriate where regulation burdens right to defend self "on a finite amount of property" and that property is not a place the defendant "arguably *need*[s] to use on a regular basis.") (emphasis in original).

51

Applying intermediate scrutiny to laws regulating the ability to carry firearms outside the home in certain circumstances not only comports with historical practice, see *supra* at 37-39, but it "makes sense." *Bonidy*, 790 F.3d at 1126.

> The right to carry weapons in public for self-defense poses inherent risks to others. Firearms may create or exacerbate accidents or deadly encounters, as the longstanding bans on private firearms in airports and courthouses illustrate. . . . Intermediate scrutiny appropriately places the burden on the government to justify its restrictions, while also giving governments considerable flexibility to regulate gun safety.

*Id.*

## 2. The Capitol Grounds Security Statute Promotes a Substantial Government Interest.

The Capitol Grounds security statute was "enacted to protect the national legislature at the very seat of its operations." *Jeannette Rankin Brigade*, 421 F.2d at 1093 n.3. It also serves the equally important purpose of protecting the thousands of people who visit the Capitol Grounds each year, particularly those who assemble to demonstrate regarding political issues of the day. The Capitol Grounds provide an important forum for the exercise of First Amendment rights, including public protests, which may "invite dispute" or "even stir[]

52

people to anger." *Jeannette Rankin Brigade*, 342 F. Supp. at 585 (internal citation omitted).   There is an obvious need to limit the availability of firearms in such areas. "The Second Amendment does not disable Congress and the states from erecting preventative measures" to address these compelling government security interests. *See United States v. Mahin*, 668 F.3d 119, 127 (4th Cir. 2012).

In addition, the Maryland Avenue lot was reserved for the use of congressional staff.   Prohibiting firearms in that area advances the federal government's "compelling interest" in ensuring safety on its own property for the public and its own employees. *See Masciandaro*, 638 F.3d at 473. The government's authority as "the property owner" allows greater latitude to ensure safe usage of the area.   The proprietary regulation here is "not the unconstitutional exercise of police power that was the source of the ban addressed in *Heller*."  *Dorosan*, 350 F. App'x. at 875.

The statute is sufficiently tailored to meet its several purposes; it applies to a relatively small, confined government complex, and affects only people who choose to go there. The restrictions apply to the areas between the Capitol, the House and Senate office buildings, and the

53

Library of Congress buildings where Members of Congress and their staffs are likely to be present as they go about their daily work. Although the Grounds are open to the public, public use is highly regulated. *See Jeannette Rankin Brigade*, 342 F. Supp. at 587-588 (noting variety of regulations restricting conduct on Capitol Grounds, including prohibitions on firearms). In addition to the importance of regulating the presence of firearms on the Grounds in general, Congress has a particularly compelling interest in ensuring the safety of House staff members who park in the Maryland Avenue lot, and of the members of the public who may congregate in the immediately adjacent area designated for public demonstrations.

*Amicus* complains about the scope of the restriction (Am.Brf. at 33-39), but the notion that it would be possible to enforce the restriction only against those who were not "law abiding," or only at times when Congress is in session, or only in areas that are less heavily trafficked by the public, is simply unrealistic. Such a patchwork of exceptions would undermine the clarity of the statute, and is constitutionally unnecessary with respect to a government-owned area of "limited geographic scope," *Jeannette Ranking Brigade*, 421 F.2d at 1093 n.3,

that is dedicated to the work of the national legislature. Congress was not required "to fashion one set of rules for its parking lots and another for its buildings and perhaps another for the steps leading up to the building. Intermediate scrutiny does not require a perfect fit between a rule's objectives and the circumstances of each individual subject to the rule." *Bonidy*, 790 F.3d at 1127; *see also, e.g., Schrader*, 704 F.3d at 990 ("[T]he fit between the challenged regulation and the asserted objective [need only] be reasonable, not perfect") (internal quotation marks and citation omitted; insertion in original); *Mahin*, 668 F.3d at 127-128 ("intermediate scrutiny has never been held to require a perfect end-means fit").

Therefore, even if appellant has not waived appeal of his Second Amendment claim, it should be denied.

## III. The Capitol Grounds Security Statute Is Not Unconstitutionally Vague.

Even if *Amicus*'s vagueness argument were not foreclosed by appellant's failure to raise the argument in the district court and his unconditional guilty plea, it is meritless.

*Amicus* contends that the Capitol Grounds security statute is unconstitutionally vague because it is difficult to understand the

55

boundaries of the Capitol Grounds, particularly with respect to the Maryland Avenue parking lot where appellant left his firearms (Am.Brf. 51, 53). *Amicus* also argues that a "more stringent" vagueness standard should apply to a statute that implicates the exercise of a constitutional right (*id.* at 51).

The Due Process Clause bars enforcement of a criminal statute on vagueness grounds only if the statute "'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Hodge v. Talkin*, 799 F.3d 1145, 1171 (D.C. Cir. 2015) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008) (evaluating for vagueness a criminal statute that implicated First Amendment expressive conduct)). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. A person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of

others." *Hodge*, 799 F.3d at 1172 (internal quotation marks and citations omitted).

*Amicus* claims that a person of ordinary intelligence would not be able to understand the boundaries of the Capitol Grounds because to do so would require obtaining a map showing the boundaries of the Grounds as they were in 1946, and then locating subsequent public laws that expanded those boundaries (Am.Brf. 51-52) (citing 40 U.S.C. § 5102(a)).[24] Even supposing that were true, the fact that it might take a few additional steps to clarify the boundaries does not make the statute unconstitutionally vague. *See, e.g., Klein v. San Diego Cty.*, 463 F.3d 1029, 1039 (9th Cir. 2006) (statute prohibiting picketing within 300 feet of dwelling not unconstitutionally vague where would-be picketers could obtain tax assessment maps to estimate distance to dwelling).

---

[24] Section 5102(a) reads:

> (a) Legal description.—The United States Capitol Grounds comprises all squares, reservations, streets, roadways, walks, and other areas as defined on a map entitled "Map showing areas comprising United States Capitol Grounds", dated June 25, 1946, approved by the Architect of the Capitol, and recorded in the Office of the Surveyor of the District of Columbia in book 127, page 8, including all additions added by law after June 25, 1946.

"[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

In any case, a person of reasonable intelligence would have been on notice that the parking lot in which appellant left his firearms was on the Capitol Grounds. The lot is in the 200 block of Maryland Avenue, S.W. (J.A. 152). That block of Maryland Avenue runs along the north side of the U.S. Botanic Garden, between First Street, S.W., on the east and Third Street, S.W., on the west (see S.A. 136). Section 5102(c)(1)(C) – which *Amicus* overlooks -- expressly incorporates the National Garden of the U.S. Botanic Garden within the definition of Capitol Grounds, including the following:

> (C) all grounds bounded by the curblines of First Street, Southwest on the east; Washington Avenue, Southwest to its intersection with Independence Avenue, and Independence Avenue from such intersection to its intersection with Third Street, Southwest on the south; Third Street, Southwest on the west; and Maryland Avenue, Southwest on the north.

40 U.S.C. § 5102(c)(1)(C). As the government pointed out in the district court, this provision is a "clear reference to the 100 to 300 block of Maryland Avenue, Southwest" (J.A. 138). Appellant did not dispute this reading of the statute.

Because the Capitol Grounds are defined, literally, by concrete boundaries, *Amicus*'s reliance on *Washington Mobilization Comm. v. Cullinane*, 566 F.2d 107 (D.C. Cir. 1977), is misplaced. *Cullinane*, evaluated for vagueness a so-called police-line regulation that authorized police officials to restrict access to otherwise public areas. *Id*. at 117-118. The Court found that a police line established on an *ad hoc* basis would not violate due process if it was clearly marked and notice of the restricted access was given. *Id*. at 118. The due process concerns presented in the unique circumstances of *Cullinane* – *i.e.*, temporary and movable police lines – are not present here. The general boundaries of the Capitol Grounds are defined by permanent and immovable streets, which are clearly marked by their own signs, and the statutory language is sufficiently clear that "a person of ordinary intelligence," *i.e.*, someone who can read a map, can determine which streets, sidewalks, parking lots, and other areas are within the Capitol Grounds.

Contrary to *Amicus*'s suggestion (Am.Brf. at 54-56), a regulatory provision may survive a vagueness challenge even if its prohibitions are not posted, and it does not require proof that a defendant had actual

knowledge of the prohibition. *Amicus* relies on *Klein*, 463 F.3d at 1039, in which the Ninth Circuit noted that a city ordinance that prohibited picketing within 300 feet of a private dwelling "could" be unconstitutionally vague if a defendant could not determine the boundary "with any precision and the lack of a scienter element left [the defendant] strictly liable for any violation." *Id*. However, *Klein* went on to hold that the statute in question was not unconstitutionally vague, even though no individual signs were posted and there was no "actual knowledge" element, because the statute was clear and its scope was ascertainable. The Ninth Circuit found that an individual who wished to picket a dwelling could estimate the distance by consulting county tax assessment maps; even though those maps did not show exactly where a residence sat on the lot, it was sufficient for due-process purposes that "a would-be picketer, with the lot map in hand, should be able to estimate the boundary with some level of precision." *Id*. Given that the boundaries of the Capitol Grounds are far easier to ascertain, particularly with respect to the Maryland Avenue parking lot, the Capitol Grounds security statute survives a vagueness challenge without regard to any showing of actual knowledge or posted notice.

60

There is also evidence in this case that implies appellant was aware that possession of firearms on the Capitol Grounds was restricted, which further obviates concerns about the clarity of the statute. By his own account (J.A. 129), appellant had been to the Capitol and congressional office buildings before May 2013. He would have had to pass through the security screening process to enter those buildings, which would have put him on notice that weapons and other potentially dangerous objects were prohibited. Appellant's behavior on the day of his arrest also suggests that he was aware that he could not carry firearms on Capitol Grounds. He did not take any of his guns with him to the Capitol or congressional office buildings that he visited, despite his professed belief that his North Carolina license to carry a concealed firearm allowed him to carry a firearm here.

Therefore, the constitutional vagueness claim should be denied.

## IV. Application of the Capitol Grounds Security Statute to Appellant Does Not Violate the Equal Protection or Privileges and Immunities Clauses.

Appellant has offered little more than conclusory allegations to support his Equal Protection and Privileges and Immunities claims,

61

and *Amicus* avoids a separate analysis by saying that both issues turn on the Second Amendment argument (Am.Brf. 50 n.14). Because these claims are undeveloped, they should be summarily denied. *See United States v. Law*, 528 F.3d 888, 908 n.11 (D.C. Cir. 2008) (cursory or undeveloped claims are forfeited). The claims would fail in any event.

Appellant contends that his conviction violates the Equal Protection Clause, suggesting that he has been treated differently because he is disabled (App.Brf. 12, 29), and because his North Carolina license to carry a concealed weapon did not insulate him from prosecution (*id.* at 26-27, 29). There is no support for these claims. As *Amicus* acknowledges (Am.Brf. 50 n.14), every person – whether or not disabled or in possession of a concealed-carry license from any jurisdiction – would be subject to prosecution under the facts and circumstances of this case. Appellant has not, and cannot, show that he has been treated differently from any other person who carries firearms onto the Capitol Grounds. Thus, his conviction does not implicate the Equal Protection Clause. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any

62

person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").[25]

"The privileges and immunities clause of article IV, section 2, serves to establish a 'norm of comity . . . that is to prevail among the States with respect to their treatment of each other's residents.'" *Hicklin v. Orbeck*, 437 U.S. 518, 523-524 (1978) (citation omitted). Appellant has been prosecuted and convicted by the United States, not an individual state. *See Neild v. District of Columbia*, 110 F.2d 246, 249 n. 3 (D.C. Cir. 1940) (Privileges and Immunities Clause is "a limitation upon the states only and in no way affects the powers of Congress over the District of Columbia"). Even if the Privileges and Immunities Clause applied to the Capitol Grounds security statute, there has been no violation of the rule of comity because the statute applies to all persons on the Capitol Grounds regardless of the state in which they

---

[25] Moreover, North Carolina's concealed-carry law "do[es] not trump federal law[]" and, therefore, appellant's right to carry a concealed firearm in North Carolina "does not undermine the constitutionality of [the Capitol Grounds security statute]." *Bonidy*, 790 F.3d at 1127.

reside. Thus, appellant's claim under the Privileges and Immunities Clause also fails.

## V.    Appellant's Statutory Claims Have No Merit.

Assuming that appellant's two statutory claims are not waived, they are meritless because they are based on the wrong statutes.

Appellant's claim that he was entitled to written notice that it was unlawful to carry weapons on the Capitol Grounds parking lot on Maryland Avenue (App.Brf. 19-21, 27) is based on 18 U.S.C. § 930, which regulates the possession of firearms and dangerous weapons in federal facilities. Subsection (a) of that statute generally prohibits the knowing possession of a firearm in a federal facility, other than a court facility. Subsection (h) requires that notice of this prohibition be posted "conspicuously at each public entrance to each Federal facility," and further states that a person cannot be convicted of violating Subsection (a) unless notice was posted or that person had actual notice of the prohibition. 18 U.S.C. §§ 930(a) & (h). Those provisions are irrelevant here because appellant pled guilty to violating 40 U.S.C. § 5104, which has no notice requirement. Neither he nor *Amicus* has shown that the

64

notice requirements of 18 U.S.C. § 930 apply to convictions under Section 5104.

Moreover, appellant was on notice that he was not allowed to park in the Maryland Avenue lot, because signs in that lot warned that parking was by permit only (J.A. 125 n.1). Posted warnings that firearms were also prohibited in that non-public, government-owned lot would be superfluous for someone who was not entitled to use the lot at all.

Appellant is also mistaken when he argues that he could not be convicted of carrying "firearms" on the Capitol Grounds because the guns he had concealed in his Jeep do not qualify as "firearms" under the National Firearms Act of 1934 (App.Brf 21-23, 28). As Judge Kessler found in her April 16 Memorandum Opinion and Order, because appellant "is not charged under the National Firearms Act of 1934, . . . it is irrelevant to this case" (J.A. 91). The applicable definition of "firearms" can be found in 18 U.S.C. § 921(3), which is incorporated by reference in 40 U.S.C. § 5104(a)(4) (see *id*.). Appellant does not contend that the two handguns and the rifle recovered from his Jeep do not meet

that definition. This claim should be rejected for the reasons stated by Judge Kessler.

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney

ELIZABETH TROSMAN
CHRISELLEN R. KOLB
JEFFREY PEARLMAN
Assistant United States Attorneys

_____/s/_____
VALINDA JONES, D.C. Bar #398464
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Valinda.Jones@usdoj.gov
(202) 252-6829

66

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 13,306 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

         /s/         

VALINDA JONES
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 22nd day of February, 2016, I have caused a copy of the foregoing Brief for Appellee to be sent by first-class mail to the following address listed on the court docket for Mr. Class:

> P.O. Box 435
> High Shoals, N.C. 28077

I also caused a copy of the foregoing motion to be served by electronic means, through the Court's CM/ECF system, upon court-appointed amicus curiae:

> David W. DeBruin
> Jessica Ring Amunson
> R. Trent McCotter
> Jenner & Block, L.L.P.
> 1099 New York Ave., N.W.
> Washington, D.C. 20001

/s/

VALINDA JONES
Assistant United States Attorney